# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# BRUNSWICK DIVISION

AMY LATRELLE CLARK,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner,

    Defendant.

CIVIL ACTION NO.: 2:15-cv-38

## **ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff contests the decision of Administrative Law Judge G. William Davenport ("the ALJ" or "ALJ Davenport") denying her claim for period of disability, disability insurance benefits, and supplemental security income benefits. Plaintiff urges the Court to reverse the ALJ's decision and award her benefits or, in the alternative, to remand this case for a proper determination of the evidence. Defendant asserts the Commissioner's decision should be affirmed. For the reasons which follow, I **RECOMMEND** the Court **AFFIRM** the Commissioner's decision.

## BACKGROUND

Plaintiff protectively filed an application for period of disability, disability insurance benefits, and supplemental security income benefits on April 27, 2012, alleging that she became disabled on December 15, 2009, due to depression, bipolar disorder, and intellectual disability. (Doc. 9-3, p. 61; Doc. 11, p. 1.) After her claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On July 24, 2013, ALJ Davenport conducted a hearing at which Plaintiff, who was represented by a counsel, appeared and testified. Kim

Bennett, a vocational expert, also appeared at the hearing. ALJ Davenport found that Plaintiff was not disabled within the meaning of the Act. (Doc. 9-3, p. 61.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Doc. 9-2, p. 2.)

Plaintiff, born on August 26, 1983, was thirty (30) years old when ALJ Davenport issued his final decision. She has a high school education.[1] (Doc. 11, p. 2; Doc. 9-3, p. 71.) Plaintiff's past relevant work experience includes employment as a laborer, a stock clerk, a hospital cleaner, and a hand packager. (Doc. 13, p. 2.)

## DISCUSSION

### I. The ALJ's Findings

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520 & 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Yuckert, 482 U.S. at 140–41. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) & 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If

---

[1] The Court notes ALJ Davenport stated in his opinion that Plaintiff obtained her GED. (Doc. 9-3, p. 66.) However, Plaintiff graduated from high school after placement in special education classes. (Doc. 11, p. 2.)

2

the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141. If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform his past relevant work. Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013). A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite his impairments." Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). If the claimant is unable to perform his past relevant work, the final step of the evaluation process determines whether he is able to make adjustments to other work in the national economy, considering his age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of December 15, 2009, through the date of ALJ Davenport's decision on September 25, 2013. (Doc. 9-3, p. 63.) At Step Two, the ALJ determined that Plaintiff had depressive disorder and borderline intellectual functioning, conditions considered "severe" under the Regulations. However, the ALJ determined that Plaintiff's medically determinable impairments did not meet or medically equal a listed impairment. (Id. at p. 65.) The ALJ found that Plaintiff had the residual functional capacity, through the date of his decision, to perform a full range of work at all exertional levels, except with the non-exertional limitation of doing simple, relatively repetitive work. (Id. at p. 67.) At the next step, ALJ Davenport noted Plaintiff was able to

3

perform her past relevant work as a hospital cleaner, hand packager, and laborer, as these jobs were actually performed and how they are generally performed. (Id. at p. 70.)

## II. Issues Presented

Plaintiff contends the ALJ erred by failing to find Plaintiff meets or equals Listing 12.05. (Doc. 11, pp. 11–17.) Plaintiff also contends the ALJ's residual functional capacity finding is not supported by substantial evidence. (Id. at pp. 17–20.) Plaintiff asserts the ALJ did not make a proper credibility determination. (Id. at pp. 20–22.) Finally, Plaintiff alleges the ALJ erred in finding that she could perform her past relevant work. (Id. at pp. 22–25.)

## III. Standard of Review

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards.

Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

**IV.     Whether Substantial Evidence Supports the ALJ's Determination That Plaintiff did not Meet Listing 12.05**

Plaintiff asserts the ALJ discounted her multiple IQ scores, which reveal that she falls within Listing 12.05B or Listing 12.05C. Plaintiff also asserts the ALJ failed to consider her additional work-related limitations, specifically her major depressive disorder. (Doc. 11, pp. 11, 17.) Plaintiff maintains the record contains no evidence she ever held a semi-skilled job, as she performed it. (Id. at p. 12.)

Defendant states substantial evidence supports the ALJ's determination that Plaintiff did not meet Listing 12.05, despite Plaintiff's IQ scores. (Doc. 13, p. 4.) Defendant asserts ALJ Davenport determined Plaintiff's IQ scores, as found by Dr. Marc Eaton, were inconsistent with Plaintiff's educational background, work history, and the medical evidence. (Id. at p. 6.)

"For a claimant to show that [her] impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Arrington v. Soc. Sec. Admin., 358 F. App'x 89, 93 (11th Cir. 2009) (citing Sullivan v. Zebley, 493 U.S. 521, 530 (1990)). To prevail at step three, the claimant must provide specific evidence—such as medical signs, symptoms, or laboratory-test results—showing that her impairment meets or medically equals a listed impairment. Sullivan, 493 U.S. at 530. A claimant whose severe impairment satisfies or medically equals a listed impairment is "conclusively presumed to be disabled based on his or her medical condition." Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997). If a claimant cannot prove that she is disabled at step three, she may do so at steps four and five. See Phillips v. Barnhart, 357 F.3d 1232, 1238–40 (11th Cir. 2004).

5

The ALJ's finding as to whether a claimant does or does not meet a listed impairment need not be explicit and may be implied from the record. Hutchison v. Bowen, 787 F.2d 1461, 1463 (11th Cir. 1986) (holding that the ALJ implicitly found that the claimant did not meet a Listing because it was clear from the record that the ALJ had considered the relevant law and evidence). Furthermore, although the ALJ must consider the Listings in making his disability determination, he is not required to recite mechanically the evidence leading to his ultimate determination. Bellew v. Acting Comm'r of Soc. Sec., 605 F. App'x 917, 920 (11th Cir. 2015) (internal citation omitted).

To meet Listing 12.05 ("intellectual disability")[2], "a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." Crayton, 120 F.3d at 1219. These requirements are referred to as the Listing's "diagnostic criteria." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 ("Listing 12.05 contains an introductory paragraph with the diagnostic description for [intellectual disability].") In addition to satisfying the diagnostic criteria, a claimant must meet one of the four severity requirements in paragraphs A through D of the listing. See id. § 12.05. Under paragraph C, a claimant must show that she has both "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. A valid IQ score of 60 to 70 satisfies the first prong of paragraph C and creates a rebuttable presumption that the

---

[2] Effective September 3, 2013, the Social Security Administration replaced the term mental retardation with the term intellectual disability as a listed impairment. Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46499-01 (Aug. 1, 2013) (to be codified at 20 C.F.R. Pt. 404, Subpt. P, App. 1). This change was made because "the term 'mental retardation' has negative connotations," and "has become offensive to many people." Id. at 46499. This change "d[id] not affect the actual medical definition of the disorder or available programs or services." Id. at 49500. "So while the ALJ, whose decision issued before the change took effect, and the parties use the old terminology, we follow the agency's new nomenclature." Frame v. Comm'r, Soc. Sec. Admin., 596 F. App'x 908, 911 (11th Cir. 2015).

claimant satisfies the diagnostic criteria for intellectual disability." Hodges v. Barnhart, 276 F.3d 1265, 1268–69 (11th Cir. 2001). "At the same time, it is well established that such a presumption does not arise where a qualifying IQ score is inconsistent with other record evidence concerning her daily activities and behavior." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (citing Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986)). "But once the ALJ accepts an IQ score as valid and finds that the claimant's impairments meet or medically equal the other criteria of listing 12.05C, the disability determination cannot be based on the claimant's age, education, or work experience." Id. "In sum, a claimant proves that she meets listing 12.05C by establishing the diagnostic criteria for intellectual disability, including deficits in adaptive functioning; showing onset before age 22; producing a valid, qualifying IQ score; and exhibiting the requisite deficits in work-related functioning." Frame, 596 F. App'x at 911.

ALJ Davenport determined the severity of Plaintiff's mental impairments, considered singly and in combination, do not meet or equal listing 12.05.[3] (Doc. 9-3, p. 65.) ALJ Davenport specifically noted he considered whether Plaintiff satisfied the "paragraph D" criteria of Listing 12.05. To satisfy these criteria, a plaintiff must have two or more of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. (Id.) The ALJ observed Plaintiff had mild restriction in her activities of daily living, which he found to be supported by Plaintiff's reports of caring for her three young children, preparing meals, performing chores, caring for her hygiene, and shopping and Plaintiff's testimony that she is able to make change while shopping, though it is difficult. (Id.) The ALJ determined Plaintiff had mild difficulties in social

---

[3] ALJ Davenport also determined Plaintiff's mental impairments did not meet or medically equal Listing 12.04. (Doc. 9-3, p. 65.) As Plaintiff does not assert the ALJ erred in failing to find she met Listing 12.04, the Court need not recount any determinations as to Listing 12.04.

7

functioning, as shown by Plaintiff's reports of going shopping, attending church, and maintaining relationships with family and friends. The ALJ also noted Plaintiff was pleasant at the hearing, and consultative examiners found her to be cooperative at examinations. (Id.) In finding Plaintiff had moderate difficulties in concentration, persistence, or pace, ALJ Davenport noted Plaintiff reported that she could concentrate to complete chores and shopping trips and to focus on following television programs. ALJ Davenport found further support with Plaintiff's abilities to pay attention, sustain goal-directed behaviors, and concentrate during the consultative examinations. (Id.) The ALJ also noted Plaintiff's testimony that she worked as a certified nursing assistant and as a retail stocker, both of which were jobs showing she could pay attention and keep track of multiple details. As to the fourth of these criteria, ALJ Davenport found Plaintiff had experienced no episodes of mental decompensation. (Id.)

ALJ Davenport observed Plaintiff did not meet the "paragraph A" requirements because Plaintiff could care for her and her children's personal needs, follow directions, and had previously worked semi-skilled jobs.[4] (Id. at p. 66.) The ALJ determined Plaintiff did not meet the "paragraph B" criteria, as she had no valid verbal, performance, or full scale IQ score of 59 or less. While ALJ Davenport noted Plaintiff's full scale score of 53, verbal comprehension score of 58, working memory score of 55, and processing speed score of 59 during testing in a July 2010 consultative examination, he also noted such low scores would be impossible for Plaintiff, who reported being engaged in semi-skilled work and obtaining her high school diploma. (Id.) The ALJ recounted the vocational expert's uncontradicted testimony that "no one

---

[4] ALJ Davenport noted the paragraph D criteria of Listing 12.05 are used to determine the severity of mental impairments at Steps 2 and 3, whereas a more detailed assessment of a claimant's mental residual functional capacity is required at Steps 4 and 5. (Doc. 9-3, p. 66.) ALJ Davenport's assessments of Plaintiff's meeting the criteria of paragraphs A, B, and C speak to Plaintiff's residual functional capacity. The Court has grouped the ALJ's findings as to Listing 12.05 under this Section, except as necessary to discuss in Section V of this Report.

8

with a valid IQ score of 53 could work successfully at either the retail stocker work or the [certified nursing assistant] job[.]" (Id. at p. 66.) Moreover, the ALJ noted a psychological consultative examination in which the examiner rated Plaintiff as having a borderline intellect after commenting Plaintiff did not present herself as a person with developmental disability. (Id.) Finally, the ALJ determined Plaintiff did not meet the "paragraph C" criteria because she did not have valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment resulting in an additional and significant work-related limitation.

ALJ Davenport's determination that Plaintiff did not meet Listing 12.05 is supported by substantial evidence. The ALJ looked at the areas of functioning for diagnostic criteria set forth for Listing 12.05 and determined Plaintiff did not meet those criteria based on the evidence of record. Of particular note is ALJ Davenport's observation that Plaintiff's work history involving jobs at the semi-skilled level does not comport with a finding of an intellectual disability. (Doc. 9-3, p. 66.) In short, Plaintiff fails to meet her burden of presenting evidence of an intellectual disability coupled with the limitations associated with Listing 12.05. This enumeration of error is without merit.

**V.      Whether Substantial Evidence Supports the ALJ's Residual Functional Capacity**

Plaintiff asserts the ALJ did not develop the record adequately in determining she has the residual functional capacity to perform a full range of work at all exertional levels but limited to simple, relatively repetitive work. Plaintiff avers ALJ Davenport gave great weight to Dr. David Faulk's opinion, yet the ALJ did not recognize that Dr. Faulk's opinion "was grossly inconsistent with his clinical findings[,] and [he] did not seek clarification from Dr. Faulk" as to those inconsistencies. (Doc. 11, p. 18.) In addition, Plaintiff contends the ALJ gave great weight to Dr. Roth's opinion, yet Dr. Roth indicated that Plaintiff's treating physician should substantiate

9

Plaintiff's statements. (Id. at p. 19.) Plaintiff maintains that, had the ALJ sought clarifying information from Dr. Faulk, a more restrictive functional capacity finding "could" have occurred. (Id. at p. 20.)

Defendant responds the ALJ considered the medical evidence, as well as Plaintiff's testimony and subjective complaints of symptoms to determine Plaintiff's residual functional capacity. Defendant notes that, although an ALJ has a basic duty to develop a full and fair record, this duty elevates to a special duty only when a claimant has not waived the right to counsel and is unfamiliar with hearing procedures. Defendant contends this was not the case here, as Plaintiff was represented during the hearing. (Doc. 13, p. 12.) Defendant avers the ALJ would be under no duty to re-contact Plaintiff's treating physician if this case were to be remanded, as such a decision lies within the ALJ's discretion.

A residual functioning capacity assessment must always consider and address medical source opinions. If the residual functioning capacity assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted. Social Security Ruling 96-8p. "An ALJ is not entitled to pick and choose through a medical opinion, taking only the parts that are favorable to a finding of nondisability." Kerwin v. Astrue, 244 F. App'x 880, 885 (10th Cir. 2007). The final determination of a plaintiff's residual functioning capacity is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d) & (e)(2).

In finding that Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels, but limited to simple, relatively repetitive work, the ALJ stated he considered all symptoms and the extent those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. (Doc. 9-3, p. 67.) ALJ Davenport found the medical evidence revealed Plaintiff's history of depression and

10

borderline intellectual functioning. (Id. at p. 63.) However, the ALJ determined Plaintiff's allegations as to the intensity, persistence, and limiting effects of her symptoms were not in agreement with the evidence of record. (Id. at p. 68.)

The ALJ looked to Dr. John Malbourg's treatment notes, which stated that Plaintiff was diagnosed with depression following the birth of her child in 2008 and that her symptoms had improved with Zoloft. (Id. at p. 64.) The ALJ noted that there was nothing of record in terms of further treatment for depression until July 2010 when Plaintiff attended a consultative examination with Dr. Marc Eaton and alleged she had mood swings, anger, irritability, and depression. (Id.) Plaintiff was fully oriented with a depressed mood. Plaintiff had a full scale IQ score of 53 upon testing, which placed her in the "extremely low range of intellectual functioning." (Id.) ALJ Davenport discounted this score, as it was inconsistent with her education and her vocational history.

ALJ Davenport noted Plaintiff had another consultative examination in November 2011 with Dr. Kristiansson Roth, at which time Plaintiff reported suffering from crying spells, bipolar disorder, and anger. Dr. Roth noted Plaintiff's report of having graduated from high school while in special education classes and her self-diagnosis of bipolar disorder based on her symptoms. (Id.) ALJ Davenport posited that making such a diagnosis would be "clearly impossible for anyone who truly is mentally retarded", and he noted Dr. Roth's statement that Plaintiff did not present herself as a person with a developmental disorder. (Id.) Dr. Roth found Plaintiff to be well-oriented, exhibited adequate concentration, and able to sustain attention and focus to carry out goal-directed behaviors during examination. Dr. Roth diagnosed Plaintiff with borderline intellectual functioning as a provisional diagnosis. (Id.; Doc. 9-7, p. 38.)

The ALJ noted Dr. David Faulk's treatment of Plaintiff beginning in March 2012, at which time Plaintiff reported depression symptoms with mood swings and racing thoughts, having had a baby recently, and to being fearful of her aunt and uncle taking her baby. Upon examination, Plaintiff was found to be fully oriented, with a severely depressed mood and constricted affect. Plaintiff had normal thought processes and reported suicidal ideations and anger. Plaintiff had limited insight and judgment but a normal memory. Dr. Faulk diagnosed Plaintiff with major depressive disorder and prescribed Depakote, Fluoxetine, and Zyprexa. ALJ Davenport observed the sparsity of follow up notes, but what few notes were in the record revealed that Plaintiff had a good response to these medications. (Id.; Doc. 9-9, p. 21.)

ALJ Davenport stated his residual functional capacity assessment was supported by Plaintiff's longitudinal treatment record, the effectiveness of the treatment and medication regimens, and the opinions of Dr. Faulk (her treating physician) and Dr. Roth (a consultative examiner). (Doc. 9-3, p. 69.) The ALJ observed that no medical source opined Plaintiff was unable to work, and he further observed that the State Agency physicians found Plaintiff's impairments were non-severe. However, the ALJ recognized that the credible medical sources (Drs. Faulk and Roth) provided that Plaintiff had limitations in her ability to concentrate, which is why he reduced her capacity to perform work. (Id.) Additionally, ALJ Davenport credited the statements of Plaintiff's stepfather, to the extent his statements revealed Plaintiff was capable of personal hygiene demands, making simple meals, performing household chores, shopping with assistance, and following television programs. (Id.)

The ALJ's determination that Plaintiff maintained the residual functional capacity to perform a full range of work at all levels is supported by substantial evidence. ALJ Davenport looked at the objective medical and other evidence of record, as well as Plaintiff's subjective

allegations. As the Commissioner noted, the ALJ did all that was required of him regarding Plaintiff's treating sources. (Doc. 13, p. 12.) This enumeration of error is without merit.

**VI.     Whether Substantial Evidence Supports the ALJ's Credibility Determination**

Plaintiff asserts the ALJ failed to properly analyze her activities of daily living and "the precipitating and aggravating factors of [her] symptoms." (Doc. 11, p. 20.) Plaintiff alleges the ALJ focuses on unsubstantiated statements she made which were the result of the ALJ's leading questions at the hearing. In addition, Plaintiff states the ALJ failed to consider Plaintiff's use of a walker and her testimony that she cannot stand on her feet for a long duration of time because of her back pain.

Defendant avers ALJ Davenport explained his reasons for finding Plaintiff less than fully credible, such as her subjective complaints being inconsistent with the medical record, her extensive daily activities, her work history, and Plaintiff's statements as to why she was not working. Further, Defendant notes the ALJ determined treatment had improved Plaintiff's symptoms. (Doc. 13, p. 15.)

In order to establish disability based on testimony of pain and other symptoms, a social security disability benefits claimant must show: (1) evidence of underlying medical condition; and (2) either (a) objective medical evidence confirming severity of alleged pain, or (b) that objectively determined medical condition could reasonably be expected to give rise to claimed pain. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). If a plaintiff "testifies as to [her] subjective complaints of disabling pain and other symptoms, . . . the ALJ must clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Foote v. Chater, 67 F.3d 1553, 1561–62 (11th Cir. 1995)). "Although this circuit does

not require an explicit finding as to credibility, the implication must be obvious to the reviewing court." Id. (internal citation omitted). An ALJ's credibility determination need not "cite 'particular phrases or formulations'[,] but it cannot merely be a broad rejection which is 'not enough to enable [a reviewing court] to conclude that [the ALJ] considered [a plaintiff's] medical condition as a whole.'" Id. at 1210–11 (quoting Foote, 67 F.3d at 1561).

ALJ Davenport found Plaintiff's testimony was not fully credible concerning the severity of her symptoms and the extent of her limitations, as her symptoms and claimed limitations were not supported by the record. Specifically, the ALJ noted Plaintiff alleged she had debilitating depression and difficulties with learning that prevented her from working. However, the medical evidence of record revealed that Plaintiff's treatment for depression had been "relatively sparse" and consisted of "primarily conservative medication management with no recommendations for dedicated treatment, counseling, psychiatric hospitalizations, or other more aggressive treatment options that would be expected for symptoms to the degree alleged." (Doc. 9-3, p. 68.) ALJ Davenport also noted Plaintiff's claims of being unable to handle being around people was "belied by her current abilities to shop, attend church every week, and also by her previous work history in numerous jobs which involved significant interpersonal contacts[,]" despite no changes in her medical records. (Id.) The ALJ noted Plaintiff's claims that she is severely limited in her intellectual abilities and unable to count to be contradicted by her previous work as a stock clerk and certified nurse's assistant, as well as her educational level. In addition, ALJ Davenport observed that the vocational expert opined that an individual with an IQ of 53 could not perform the jobs Plaintiff had without accommodation and that Dr. Roth observed that Plaintiff did not present upon examination as a person with a developmental disorder. (Id.) Further, the ALJ noted Plaintiff testified that she could not work due to lack of childcare, not due to her alleged

impairments. Moreover, ALJ Davenport stated Plaintiff's extensive activities of daily living, including caring for her three young children, cooking, performing household chores, and attending church belie her claims of total disability. (Id.)

It is evident ALJ Davenport did not find Plaintiff's allegations regarding disabling conditions to be credible, as he found Plaintiff's allegations to be contradicted by the record. ALJ Davenport made specific credibility findings, and he considered Plaintiff's medical history as a whole. ALJ Davenport met the legal requirements as to his credibility findings, and Plaintiff offers no valid reason why this Court should reject those findings. This enumeration of error is without merit.

**VII. Whether Substantial Evidence Supports the ALJ's Determination That Plaintiff Could Return to her Past Relevant Work**

Plaintiff maintains ALJ Davenport erred in failing to make specific and substantial inquiry into the relevant physical and mental demands associated with her part relevant work. (Doc. 11, p. 22.) Plaintiff contends this error "is striking" considering her significant mental limitations and very low IQ and the ALJ's reliance on vocational expert testimony based on a mischaracterization of Plaintiff's testimony. Plaintiff contends the hypothetical posed to the vocational expert was incomplete, as it did not account for the ALJ's determination that Plaintiff had moderate limitations in concentration, persistence, and pace. (Id. at p. 24.)

Defendant responds that Plaintiff failed to carry her burden of proving she could not perform her past relevant work. Defendant avers the ALJ presented a comprehensive hypothetical to the vocational expert, which was consistent with his residual functional capacity findings, and the ALJ properly relied on the vocational expert's testimony that Plaintiff could perform her past relevant work. (Doc. 13, p. 19.) Defendant states that the ALJ's determination that Plaintiff had moderate limitations in concentration, persistence, and pace goes to her mental

15

impairments and is not an assessment of her residual functional capacity. (Id. at p. 20.) In addition, Defendant states the ALJ acknowledged Plaintiff's limitations in this area by reducing her residual functional capacity to work with restrictions regarding simple, repetitive work. (Id. at p. 21.)

To support a finding that the claimant is able to return to her past relevant work, the ALJ must: (1) consider all the duties of that work and (2) evaluate the claimant's ability to perform them in spite of her impairments. Klawinski v. Comm'r of Soc. Sec., 391 F. App'x 772, 775 (11th Cir. 2010) (citing Lucas v. Sullivan, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990)). A claimant seeking disability benefits bears the burden of proving that she cannot perform her past relevant work either as she performed it or as it is generally performed in the national economy. 20 C.F.R. §§ 404.1520(f), 404.1560(b)(3). "If the ALJ finds that the claimant cannot perform the functional demands and duties of her past job as she actually performed it, he will consider whether the claimant can perform the functional demands and duties of the occupation as generally required by employers throughout the national economy." Scharber v. Comm'r of Soc. Sec., 411 F. App'x 281, 282 (11th Cir. 2011) (citing SSR 82–61, 1982 WL 31387 (1982)). The ALJ may consider the testimony of a vocational expert in determining whether the claimant still possesses the ability to perform her past relevant work. 20 C.F.R. § 404.1560(b)(2). "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." Waldrop v. Comm'r of Soc. Sec., 379 F. App'x 948, 952 (11th Cir. 2010) (citing Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004)).

Here, the ALJ noted the vocational expert testified that Plaintiff's job as a cleaner, hospital was medium, unskilled work with a specific vocational preparation of 2, per the Dictionary of Occupational Titles ("DOT"), and was performed as light work. (Doc. 9-3, p. 70.)

Plaintiff's work as a hand packager was medium, unskilled work with a specific vocational performance of 2 under the DOT and performed as light work. Plaintiff's job as a laborer was heavy, unskilled work with a specific vocational preparation of 2 under the DOT and was performed as light work. ALJ Davenport found that, assuming Plaintiff's residual functional capacity as he determined it, the vocational expert testified Plaintiff could perform the demands of these jobs, whether as performed or as classified under the DOT. However, the vocational expert testified that Plaintiff could not preform her past relevant work as a stock clerk, which was heavy, semi-skilled work with a specific vocational preparation of 4, and performed as light work. The ALJ stated that he compared Plaintiff's residual functional capacity with the physical and metal demands of the work as a cleaner, hospital; hand packager; and laborer, and found Plaintiff was able to perform these jobs as actually and generally performed, as the vocational expert testified. (Id.)

The ALJ's determination that Plaintiff could return to her past relevant work as a cleaner, hospital; hand packager; and laborer, as she actually performed these jobs, is supported by substantial evidence. In reaching this determination, ALJ Davenport relied on the relevant medical records, the testimony of the vocational expert and of Plaintiff, and other evidence of record. This enumeration of error is without merit.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **AFFIRM** the decision of the Commissioner. I also **RECOMMEND** that the Court **CLOSE** this case.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address

17

any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence. Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 24th day of March, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA